# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

vs.

Case No. 3:21-mj-1451-JBT

ANDREW CARL FULDA

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.   On or about September 23, 2021, in the Middle District of Florida, the defendant,

> did knowingly possess a firearm as defined under Title 26, United States Code, Section 5845(a) and Title 18, United States Code, Section 921, that is, a Surefire 7.62 caliber silencer, that was not then registered to the defendant in the National Firearms Registration and Transfer Record,

in violation of Title 26, United States Code, Sections 5861(d) and 5871.   I further state that I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Signature of Complainant
Jesse Hooker

Sworn to before me and subscribed in my presence,

on September 23, 2021                         at        Jacksonville, Florida

JOEL B. TOOMEY
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

Your affiant, Jesse Hooker, being duly sworn, deposes and states:

## I.    INTRODUCTION

### Identity of Affiant

1.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), U.S. Department of Justice, and have been so employed since February of 2001. Currently, I am assigned to the Jacksonville II Field Office. Prior to my employment with ATF, I was employed as an Immigration Inspector for the United States Immigration and Naturalization Service, U.S. Department of Justice, for four years. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. I hold a Master of Science degree in Criminal Justice. My duties as an ATF special agent are to investigate violations of federal law relating to alcohol, tobacco, firearms, explosives, and controlled substances.

2.     I have participated in many investigations involving the unlawful possession of firearms. In some of these investigations I have been the case agent, while in others I have acted in an undercover capacity dealing directly with the targets of the investigation. In the course of my duties as a special agent of the ATF, I have been investigating the unlawful possession of firearms, ammunition, and suppressors by Andrew Carl FULDA. This affidavit relates to that investigation.

1

3.    The information in this affidavit is based on my personal knowledge as well as information, knowledge, observations, and investigations of other federal, state, and local law enforcement officers.

4.    This affidavit does not contain all information discovered during this investigation, rather only that believed necessary to provide a legal basis for the requested criminal complaint.

## Requested Complaint

5.    Based on the information in this affidavit, it is requested that a criminal complaint be issued for Andrew Carl FULDA for violating the provisions of Title 26, United States Code, Sections 5861(d) and 5871.

## Federal Law

6.    I am familiar with federal law regarding registration of certain types of firearms pursuant to the National Firearms Act (NFA).  Pursuant to Title 26, United States Code, Sections 5845(a) and 5861(d), a silencer as defined under Title 18, United States Code, Section 921, is a firearm that must be registered in the National Firearms Registration and Transfer Record in order to be legally possessed.

7.    Title 18, United States Code, Section 921(a)(24) defines the term "firearm silencer" to mean "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer . . . and any part intended only for use in such assembly or fabrication."

2

## II.   INVESTIGATIVE ACTIVITY

8.      On September 2, 2021, I received a phone call from an individual who identified herself as a person with the initials A.M.F. A.M.F. advised me that she and her husband were presently going through a divorce and that he was subject to a domestic violence injunction. A.M.F. stated that her husband's name was Andrew Carl FULDA (FULDA). A.M.F. provided additional identifying information about FULDA such as his date of birth, social security number, his address, and the type of vehicle he drove. A.M.F. advised that FULDA is the owner/operator of Never Happened, LLC., which specializes in automotive dent removal. A.M.F. provided FULDA's personal cellular telephone number as 904-708-2770 and his work cellular telephone number as 904-708-3368.

9.      A.M.F. stated that the domestic violence injunction was issued against FULDA because he threatened A.M.F. and shot their cat. A.M.F. stated the domestic violence injunction ordered FULDA to surrender any firearms and ammunition in his possession to the Jacksonville Sheriff's Office (JSO). A.M.F. stated that she had concerns that FULDA may not have turned all his weapons and ammunition into JSO, so she initiated a court action allowing her to inspect the items FULDA relinquished to JSO. A.M.F. stated that the court action took a substantial amount of time to complete, because she changed attorneys and had to initiate the process from the beginning with her new attorney. A.M.F. stated that on August 26, 2021, she finally inspected the items FULDA surrendered to JSO at the JSO property room.

3

A.M.F. stated that she was provided with a JSO Property Storage Card that indicated that FULDA had surrendered thirty (30) items to JSO on April 9, 2020, and some of those items were gun cases.

10.    A.M.F. stated that she inspected the items surrendered to JSO and observed that only the frame/receiver portion of the AR type rifles had been surrendered to JSO and the upper receivers were all missing. A.M.F. stated that she observed that only twenty-nine (29) rounds of 9mm caliber ammunition had been surrendered. A.M.F. stated that she and FULDA had purchased thousands of rounds of ammunition in various caliber such as .45 auto, .22 caliber, .223/5.56mm caliber, and .308 caliber. A.M.F. stated that there were hundreds of boxes of ammunition in FULDA's possession when she left their house after an altercation on June 6, 2019. A.M.F. stated that she would email a copy of her domestic violence injunction and the JSO Property Storage Card to me in the future.

11.    A.M.F. told me that she believed FULDA had approximately ten (10) suppressors and at least one (1) Short Barreled Rifle (SBR) registered with ATF. A.M.F. stated that the items were registered to FULDA in a trust titled Andrew C FULDA Revocable Living Trust. A.M.F. stated that the suppressors and the SBR were in FULDA's possession when she left their house after their altercation. A.M.F. stated that she did not observe any suppressors at the JSO property room, and none were listed on the property card as being surrendered by FULDA. I note that suppressors and SBRs are both required to be registered in the National Firearms Registration and

4

Transfer Record, pursuant to Title 26, United States Code, Section 5861(d), in order to be lawfully possessed.

12.     A.M.F. stated that a firearm she purchased and left at their residence was also missing. A.M.F. stated that she purchased a Q, model Honey Badger, bearing serial number 001022 from Gun Gallery in the latter part of 2018. A.M.F. stated that she completed the ATF Form 4473 to purchase the firearm from Gun Gallery. A.M.F. stated she gave the firearm to FULDA on February 14, 2019, as a reward for being sober for 90 days. A.M.F. stated that the firearm was not included in the items FULDA surrendered to JSO.

13.     A.M.F. asserted that in January of 2012, she and FULDA began their relationship. At that time, FULDA owned two (2) firearms that consisted of a rifle and a handgun. During their relationship, they acquired the remaining firearms and ammunition, including NFA-regulated firearms and suppressors, jointly as a couple using shared income. A.M.F. estimated that she and FULDA spent between $100,000 to $150,000 on those purchases. A.M.F. stated that she did not take any of those items with her when she fled her residence after the altercation in June of 2019, because she feared what FULDA's response would be if he learned she had taken any weapons. A.M.F. stated that all the firearms had been stored in a very large gun safe in a gun room in their residence. A.M.F. believed that FULDA had rigged a "booby-trap" on the door to the gun room and feared what might happen if she opened it. A.M.F. described seeing part of a zip tie protruding from the top of the door and feared that it

might be attached to something on the other side. A.M.F. stated that she had no proof

that it was something that would cause her harm, but also feared it might alert FULDA

that she had entered the room and he might come to the house and confront her.

14.    A.M.F. stated that FULDA had spent two (2) years in the Marine Corps

and was a military policeman. A.M.F. stated that FULDA has an unnatural obsession

with firearms. A.M.F. stated that FULDA has referred to his firearms as his "Barbie

dolls" and took them out of the safe to handle on a regular basis. A.M.F. stated that

FULDA told her on many occasions that he could shoot her from 1,000 yards away

and she would never know he was in the woods.

15.    A.M.F. stated that she and FULDA have one child in common and that

FULDA was recently granted unsupervised visits with him. A.M.F. believed that

FULDA currently resides in an apartment located 4750 Seascape Way, Apt. 308,

Jacksonville, Florida 32224. A.M.F. stated that she has also seen billing records

indicating that FULDA is renting a garage at this apartment complex. A.M.F. stated

that she would attempt to acquire those records and send them to me.

16.    A.M.F. stated that an individual named Daniel Robert Steiner (Steiner)

was one of FULDA's friends. A.M.F. stated that Steiner moved into their residence

(as a roommate with FULDA) within a week of A.M.F. moving out in June of 2019.

Steiner later left the residence after FULDA moved out.

17.    According to A.M.F., Steiner owned a SCAR 7.62 caliber rifle with a

suppressor. A.M.F. stated that in 2017 or 2018, Steiner experienced money troubles

6

and sold the SCAR rifle to an individual named Michael Cagney (Mr. Cagney). A.M.F. stated that Mr. Cagney did not purchase the suppressor owned by Steiner because of the complicated transfer paperwork involved with doing so. A.M.F. stated that FULDA kept Steiner's suppressor in his safe and has never returned it. A.M.F. stated that Mr. Cagney later sold the SCAR rifle to FULDA, and she believed that she had a photograph of the rifle and the check used as payment.

18.    On September 3, 2021, I obtained information from the Florida Driver and Vehicle Information Database (DAVID) associated with FULDA's Florida driver's license number F430-003-77-249-0. The information in DAVID indicated that FULDA is a white male, 6'0" tall with brown hair. According to his driver's license record, FULDA's license was suspended on June 25, 2021.

19.    On September 3, 2021, I queried FULDA's criminal history in NCIC and learned that he was issued FBI #984638HD7 and Maryland State ID #MD3551881. The NCIC report indicated that FULDA was presently subject to a domestic violence protection order and prohibited from possessing firearms. The record also indicated that in 2010 FULDA was arrested for possession of marijuana but was not convicted of the charge.

20.    On September 3, 2021, I obtained information from DAVID related to Steiner's Florida driver's license number S356-176-71-424-0. The license indicated that Steiner is a white male, 6'3" tall with gray hair. Steiner has no prior arrests or convictions per NCIC.

7

21.     I later showed A.M.F. the Florida driver's license photograph of FULDA and she confirmed that the person in the photograph was her husband and the person subject to the domestic violence injunction.

22.     I later showed A.M.F. the Florida driver's license photograph of Steiner and she confirmed that the person in the photograph was the person she knew as Dan and the same person who owned a registered suppressor that was in FULDA's safe when she last saw it.

23.     On September 3, 2021, A.M.F. emailed me a copy of the Final Judgment of Injunction for Protection Against Domestic Violence with Minor Children After Notice, case number 16-2020-DR-001125-DVXX-MA that was filed in Duval County Circuit Court on April 14, 2020. The judgment listed the petitioner as A.M.F. and the respondent as Andrew Carl FULDA. Page 3 of the injunction states that the respondent (FULDA) shall surrender any firearms and ammunition in the respondent's possession to the JSO. Page 3 also states that respondent is further advised that it is a federal criminal felony offense to possess in or affecting commerce, any firearm or ammunition while subject to this injunction, referring to Title 18, United States Code, Section 922(g)(8).

24.     On September 3, 2021, Ms. Fulda emailed me a copy of the JSO Property Storage Card, CCR #20-0234322. The property storage card documents that FULDA surrendered thirty (30) items to JSO on April 9, 2020. The items included handguns,

8

firearms receivers, a shotgun, gun cases, and twenty-nine (29) rounds of 9mm caliber ammunition.

25.     On September 3, 2021, I queried JEA, the Jacksonville, Florida, utility company that provides water, electricity, and sewer service to residents, to determine if FULDA had an account with them. The result of the query indicated that FULDA had an active account with JEA and was listed as the customer receiving utility service at 4750 Seascape Way, Apt. 308, Jacksonville, Florida 32224. The query indicated that FULDA activated his account at his residence on April 8, 2021.

26.     On September 3, 2021, I received additional information from A.M.F. regarding FULDA and his alleged unlawful possession of firearms, ammunition, and suppressors. A.M.F. stated that, during their marriage, she and FULDA had purchased a very expensive safe in which to store their firearms and suppressors. A.M.F. stated that that the safe was a Knight Series, manufactured by Pendleton, and that it cost $9,000. A.M.F. stated that she located a copy of the check that FULDA used as payment to Knowell's Lock and Safe, Inc., for them to move the safe. A.M.F. advised that FULDA wrote the check from his business account of Never Happened, LLC. Check #1906 was dated April 8, 2021, and was in the amount of $475.00. The memo section of the check indicated "Safe Move". A.M.F. stated that she would provide a copy of the check to me.

27.     A.M.F. also stated that she had previously created a timeline of events for her attorney and could provide a modified version to me so I could have a better

understanding of the events that resulted in her seeking a domestic violence protection order against FULDA.

28.     On September 7, 2021, A.M.F. emailed me a four (4) page Word Document containing her timeline of events regarding this matter. The email from A.M.F. also contained another attachment with a photograph of a check used as payment for a garage rental at The Retreat at St. Johns Apartments. Check #1910 was dated May 4, 2021, and was in the amount of $67.74. The check was written from the business account of Never Happened, LLC and the memo section indicated "#195 Garage".

29.     On September 7, 2021, I initiated an ATF National Firearms Registration and Transfer Record search to ascertain if Steiner had any NFA-regulated firearms registered to him with ATF. The ATF NFA search indicated that Steiner, through the Daniel Robert Steiner Revocable Living Trust, had a 7.62 caliber suppressor bearing serial number F01563 registered to him with ATF.

30.     On September 7, 2021, I initiated an ATF National Firearms Registration and Transfer Record search to ascertain if FULDA had any NFA-regulated firearms registered to him with ATF. The ATF NFA search indicated that FULDA had sixteen (16) items registered to him or his trust (Andrew C Fulda Revocable Living Trust) with ATF. The items registered to FULDA and his trust include eleven (11) suppressors, four (4) short-barreled rifles, and one (1) short-barreled shotgun.

10

31.    On page three (3) of A.M.F.'s timeline she asserted that on March 30, 2020, FULDA came to her workplace and unlawfully entered her vehicle to remove her handgun from the center console (where she previously stored it). A.M.F. stated that a witness took video of FULDA entering her vehicle. A.M.F. stated that she called 911 and JSO arrived at the location and made FULDA leave. A.M.F. stated that FULDA admitted in a court hearing that he entered her vehicle and looked through her center console. On September 7, 2021, A.M.F. emailed me a copy of the video allegedly showing FULDA entering her vehicle, but I was unable to open or view the video on my computer or cell phone.

32.    A.M.F. later sent me a viewable version of the video allegedly depicting FULDA unlawfully entering her vehicle. I reviewed the video and observed a white male (believed to be FULDA), exiting a dark colored sedan (believed to be A.M.F.'s vehicle). An unknown male who appears to be videoing the incident stated what are you doing in her car "Andy" (believed to be referring to Andrew FULDA). The white male (believed to be FULDA) responded that it is my car, and we (which I believe to refer to FULDA and A.M.F.) are legally married. The white male then walked to a dark colored Toyota truck, opened the door, and then walked away.

33.    On September 7, 2021, A.M.F. emailed me a picture of the Scar rifle she alleged belonged to Steiner, who was FULDA's friend and former roommate. A.M.F. previously alleged that Steiner had experienced money troubles and sold the SCAR rifle to an individual named Michael Cagney, who later sold the rifle to FULDA.

11

34.    In addition to the picture of the Scar rifle, A.M.F. emailed me a picture of an Official Check from VyStar Credit Union that she alleged was used as payment by FULDA for the Scar rifle. The Official Check is made payable to Jim Cagney from Andrew FULDA and is in the amount of $4,150.00.

35.    A.M.F. stated that she took photographs of each firearm that she examined at the JSO property room on August 26, 2021, and she could not locate the Scar rifle described above. I reviewed the JSO Property Storage Card, CCR #20-0234322, documenting the thirty (30) items that FULDA surrendered JSO on April 9, 2020. I could not locate a Scar rifle like the one depicted in the picture sent by A.M.F. listed on the JSO property storage card.

36.    On September 8, 2021, I contacted Mark Sikes who is a member of the JSO Purge Team at the JSO Property and Evidence Warehouse. Mark Sikes is a retired JSO Detective and former ATF Task Force Officer. I provided Mark Sikes with a synopsis of the investigation related to FULDA. I advised Mark Sikes that allegations had been made claiming that FULDA had not surrendered all the firearms, ammunition, and suppressors in his possession as he was ordered to do so. I said I was aware that FULDA had surrendered numerous firearms to JSO on April 9, 2020, but wanted to ensure FULDA had not surrendered additional items that ATF might not be aware of.

37.    Mark Sikes stated that he would initiate a query to see if FULDA had surrendered any additional items to JSO. Mark Sikes later contacted me and advised

that the query conducted indicated that no additional items of property had been surrendered to JSO by FULDA other than the items surrendered on April 9, 2020. Mark Sikes then emailed me a copy of the JSO Incident Report, CCR #2020-0234322 regarding the items surrendered by FULDA to JSO on April 9, 2020.

38.     On September 8, 2021, I interviewed Geoff Knowell (Mr. Knowell) of Knowell's Lock and Safe, Inc., regarding the alleged unlawful possession of firearms, ammunition, and suppressors by FULDA.

39.     I showed Mr. Knowell my agency issued credentials and stated that I was conducting an official federal criminal investigation. I advised Mr. Knowell that ATF obtained information indicating that Knowell's Lock and Safe moved a safe for an individual who was the subject of a federal criminal investigation. Mr. Knowell stated that he would attempt to assist ATF with this matter.

40.     I showed Mr. Knowell a photograph of check #1906, dated April 8, 2021, in the amount of $475.00, from Never Happened LLC., made payable to Knowell's Lock and Safe Inc. Mr. Knowell retrieved a bound ledger and located the records regarding the transaction.

41.     Mr. Knowell stated that on April 8, 2021, his company picked up a 1,200-pound Pendleton brand gun safe from a business located at 10430 Atlantic Blvd., Jacksonville, Florida 32225 (the former business address of Never Happened LLC.). Mr. Knowell told me that, according to the ledger, the safe was moved to a residence located at 12325 Apple Leaf Drive, Jacksonville, Florida 32224 (the "Apple Leaf Drive

13

residence), and placed in the garage of the residence. Mr. Knowell stated that the customer who paid to have the safe moved was listed in their records as Andrew FULDA. Mr. Knowell stated on several occasions that Pendleton brand safes were very high quality and very expensive.

42.     After obtaining information that FULDA's safe was moved to the Apple Leaf Drive residence, I conducted research on the residence. I queried JEA, the Jacksonville, Florida, utility company that provides water, electricity, and sewer service to residents, to determine the individual responsible for utilities at the Apple Leaf Drive residence. The result of the query indicated that Allison R. Hague had an active account with JEA and was listed as the customer receiving utility service at the Apple Leaf Drive residence. The query indicated that Allison R. Hague activated her account at the Apple Leaf Drive residence on January 14, 2021.

43.     I then queried DAVID for information associated with the driver license of Allison R. Hague. The query returned the record for Florida driver license # P412-016-81-753-0 relating to Allison Rachel Phillips (Phillips), a white female. The record indicated that Allison Rachel Hague was an alias for Allison Rachel Phillips, and they were the same person. Phillips' Florida driver license indicated that she resided at the Apple Leaf Drive residence.

44.     I later contacted A.M.F. regarding this new information and asked her if she was familiar with the address of the Apple Leaf Drive residence and A.M.F. said no. I then asked A.M.F. if she was familiar with a female named Allison. A.M.F.

14

immediately stated Allison Phillips. I then asked A.M.F. how she was associated with Allison Phillips, and A.M.F. replied that she had been forwarded an email from her and her husband's CPA that contained Phillips' name on it. A.M.F. also observed Phillips' name on several bank transactions within the Never Happened LLC. bank account in which it appeared that she had received payments from the company.

45.     On September 13, 2021, I obtained copies of court documents filed in association with A.M.F.'s Petition for Injunction for Protection Against Domestic Violence (the "Petition for Injunction"), which had been retrieved from a law enforcement database. I observed that the Petition for Injunction was filed by A.M.F. on March 31, 2020, and named Andrew Carl FULDA as the respondent. The Petition for Injunction alleged FULDA to be the spouse of A.M.F. with a date of marriage of September 12, 2015. The Petition for Injunction also attached a supporting narrative that I recognized to be substantially similar to the timeline that A.M.F. had previously provided to me. I also observed that a document titled Final Judgment of Injunction for Protection Against Domestic Violence with Minor Child(ren) (After Notice) (the "Final Injunction") was filed on April 14, 2020. The Final Injunction described that the Petitioner was A.M.F. and the Respondent was FULDA, and that the Final Injunction was issued after a hearing was conducted and each party, as well as their counsel, attended via Zoom. The Final Injunction further stated that a notice of the hearing as well as a copy of the Petition for Injunction had been served on FULDA on April 3, 2020, in accordance with Florida law, and that FULDA "was afforded an

opportunity to be heard." According to the Final Injunction, the issuing court found "that Petitioner is a victim of domestic violence or has reasonable cause to believe that he/she is in imminent danger of becoming a victim of domestic violence by Respondent." The Final Injunction's terms stated that it "shall be in full force and effect until . . . October 14, 2021." The Final Injunction commanded that

> Respondent shall not commit, or cause any other person to commit, any acts of domestic violence against Petitioner. Domestic Violence includes: assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking kidnapping, false imprisonment, or any other criminal offense resulting in physical injury or death to Petitioner or any of Petitioner's family or household members.   Respondent shall not commit any other violation of the injunction through an intentional unlawful threat, word, or act to do violence to the Petitioner.

The Final Injunction further ordered that "Respondent shall surrender any firearms and ammunition in the Respondent's possession to the Jacksonville Sheriff's Office" and warned "RESPONDENT IS ADVISED THAT IT IS A FEDERAL CRIMINAL FELONY OFFENSE TO . . . POSSESS IN OR AFFECTING COMMERCE, ANY FIREARM OR AMMUNITION . . . ." and cited Title 18, United States Code, Section 922(g)(8). I observed that on April 3, 2020, FULDA executed an affidavit stating that he did not possess any firearms or ammunition, however, as noted above, FULDA did not surrender firearms to JSO until April 9, 2020.  I observed that on April 20, 2020, a Proof of Service was docketed establishing that the Final Injunction had been served on FULDA the same day.

46.     On September 8, 2021, at 9:40 pm, I conducted surveillance of the Apple Leaf Drive residence. Parked on the street in front of the Apple Leaf Drive residence was a white utility type van bearing the logo Never Happened LLC with a contact phone number on the side. The white van bore Florida tag QPC-I64. Parked in the driveway of the residence was a gold/tan colored Toyota Sienna minivan bearing Florida tag PEL-V28.

47.     I queried Florida tag QPC-I64 and learned that the vehicle was a white 2018 Ram by Chrysler van registered to Never Happened LLC., 4750 Seascape Way, Apt. 308, Jacksonville, Florida 32224. Documents related to the registration of this vehicle in DAVID list Andrew FULDA as the Title MGMR.

48.     I queried Florida tag PEL-V28 and learned that the vehicle was a beige 2012 Toyota van registered to Never Happened LLC., 4750 Seascape Way, Apt. 308, Jacksonville, Florida 32224. Documents related to the registration of this vehicle in DAVID list Andrew FULDA as the Title MGMR.

49.     On September 9, 2021, I asked an ATF Intelligence Research Specialist (IRS) to conduct research to ascertain if additional information could be obtained that associated FULDA with the Apple Leaf Drive residence. The ATF IRS advised me that she located historical data from a mobile License Plate Reader. The data indicated that on February 12, 2021, at 1:08 am, Florida license plate PEL-V28 was read in front of the Apple Leaf Drive residence.

17

50.    I have been designated as an interstate nexus expert by ATF for over seventeen (17) years and have been recognized by several United States District Courts as an expert regarding the interstate travel of firearms and ammunition. It is my opinion that the Scar rifle purchased by FULDA is a firearm as defined by federal law and was manufactured in Belgium or South Carolina.

51.    On September 13, 2021, I reviewed in more detail the results of the ATF NFA search for FULDA. As previously asserted, FULDA had sixteen (16) items registered to him or his trust (Andrew C Fulda Revocable Living Trust) with ATF. Eleven (11) of those items are suppressors and no suppressors have been surrendered to JSO by FULDA.  As described above, firearms silencers are included within the definition of "firearm" set forth in Title 18, United States Code, Section 921(a)(3), and thus prohibited persons may not possess silencers/suppressors. I know based on my training that the terms "suppressor" and "silencer" are used interchangeably to refer to devices that muffle or suppress the sound emitted when discharging a firearm.  I know based on my training and experience that in order to lawfully transfer or sell any of these sixteen (16) NFA items to another person or entity, FULDA and the purchaser would have to apply for approval from ATF to do so. There is no record that any application has been submitted or approved for FULDA to transfer NFA items out of his possession.

52.    On September 13, 2021, at 5:40 am, I conducted surveillance of the Apple Leaf Drive residence. Parked in the street in front of the Apple Leaf Drive residence

18

was a white utility type van bearing the logo Never Happened LLC with a contact phone number on the side. The white van bore Florida tag QPC-I64. Parked in the driveway of the Apple Leaf Drive residence was a gold/tan colored Toyota Sienna minivan bearing Florida tag PEL-V28. As previously documented, both vehicles are registered to Never Happened LLC., 4750 Seascape Way, Apt. 308, Jacksonville, Florida 32224. Documents related to the registration of both vehicles list Andrew FULDA as the Title MGMR.

53.     On September 14, 2021, at 10:00 am, I conducted additional surveillance of the Apple Leaf Drive residence.  During my surveillance, the garage door was opened, and I was able to observe the interior of the garage of the Apple Leaf Drive residence. During my observations of the garage interior, I did not see a gun safe. I recalled the interview I conducted on September 8, 2021, with Geoff Knowell (Mr. Knowell) of Knowell's Lock and Safe, Inc. During that interview, Mr. Knowell stated that, according to his records, FULDA's safe was delivered to the garage of the Apple Leaf Drive residence. Because I did not observe a safe in the garage, I elected to make additional contact with Knowell's Lock and Safe.

54.     On September 14, 2021, at 10:12 am I spoke with Amanda Knowell at Knowell's Lock and Safe. Amanda Knowell was familiar with this investigation, because she was served with a federal grand jury subpoena for records related to FULDA on September 9, 2021. I explained to Amanda Knowell that her company had previously provided information indicating that the safe they moved for FULDA

was delivered and placed inside the garage of the Apple Leaf Drive residence. I advised Amanda Knowell that I recently obtained information indicating the safe was not in the garage and asked if her records might be inaccurate. Amanda Knowell stated that her brother was the person who most likely moved the safe, that she would talk to him, and call me back.

55.     On September 14, 2021, at 10:34 am, Amanda Knowell contacted me and stated that she had spoken with her brother, Christopher Knowell, who confirmed he moved FULDA's safe. Amanda Knowell stated that according to Christopher Knowell, FULDA's safe was moved from an auto body repair business located on Atlantic Boulevard to the Apple Leaf Drive residence. Christopher Knowell stated that the safe was moved into the residence via the front door and placed in an office located to the right of the front door. I thanked Amanda Knowell for the information and requested that Christopher Knowell contact me to be interviewed.

56.     On September 14, 2021, at 4:27 pm, Christopher Knowell called me regarding the FULDA investigation. Christopher Knowell confirmed that he moved a black Pendleton gun safe from an auto body repair shop on Atlantic Boulevard to the Apple Leaf Drive residence. Christopher Knowell stated that the customer told him he was starting a mobile auto body repair business. Christopher Knowell stated that he could not confirm the customer's name without looking at records that he did not have access to presently. Christopher Knowell recalled that he and the customer discussed firearms that each other liked. Christopher Knowell stated that the safe was

20

moved into the residence via the front door and placed in an office located to the right of the front door. Christopher Knowell stated that a female was present at the residence and that he did not observe any firearms at the residence. Christopher Knowell stated that it was very uncommon for him to observe the contents of the safes that he moved and advised that most customers were very private and did not show him the items they kept in their safes.

57.    Based on repeated surveillance documenting the presence of FULDA's vehicles at the Apple Leaf Drive residence at various times during the day and night, his relocation of his firearms safe to the Apple Leaf Drive residence, and his apparent association with another resident of the Apple Leaf Drive residence, I reasonably believed that FULDA was residing at the Apple Leaf Drive residence and storing personal items there, including firearms-related items and firearms. I also reasonably believed that FULDA was possessing firearms (including suppressors) and ammunition despite knowing that there is an active court order that restrains him. Based on this, I applied for a warrant to search the Apple Leaf Drive residence, which was issued on September 20, 2021, in Case No. 3:21-mj-1444-JBT.

58.    On September 23, 2021, I traveled to FULDA's place of business in order to interview him, while other agents executed the search warrant at the Apple Leaf Drive residence.  At approximately 9:25 a.m., I and SA John Leahy encountered FULDA at his place of business and informed him that we were special agents for ATF and that we wished to discuss a matter with him.  FULDA asked what it was

21

about, and I explained that I had received an anonymous tip that he was a prohibited person in possession of firearms and ammunition. FULDA acknowledged that he was subject to a protection order and stated that it was set to expire on October 14. FULDA explained that he was going through a divorce and asked to contact his attorney, which we allowed FULDA to do. FULDA made a phone call (believed to be to his attorney) and then informed us that he would answer questions so long as he felt comfortable. After that, I confirmed again with FULDA that he was comfortable speaking with me and SA Leahy. I showed FULDA the firearms affidavit that he had signed on April 3, 2020, attesting that he did not possess firearms or ammunition. FULDA acknowledged that was a form he had completed and signed. I provided FULDA with a copy of the JSO property storage card reflecting the items he had relinquished to JSO, and FULDA confirmed that those were the items he had turned in to JSO and that he did not have any other firearms or ammunition. I asked FULDA about the 29 rounds of 9mm ammunition that were submitted to the JSO property room and inquired about whether he possessed other calibers of ammunition for the other firearms he had relinquished, which I observed consisted of firearms of different calibers than 9mm. FULDA claimed that he had not possessed large quantities of ammunition, and that he had given four boxes of ammunition that he had previously possessed to a friend. I asked FULDA if he was familiar with NFA items, which FULDA stated he was. I asked FULDA if he had any NFA items registered with ATF, and FULDA stated that he had registered short-barreled rifles (SBRs) and a

22

short-barreled shotgun. I then asked FULDA if he had any silencers registered. FULDA paused, then said yes. I asked if FULDA had surrendered the silencers to JSO, and FULDA stated he had not. FULDA claimed to have given his silencers to "Tom" who works at Gun Gallery. I asked FULDA if he had given the silencers to "Tom" because he is an FFL/SOT who can accept those items, and FULDA stated that Tom works at Gun Gallery. FULDA was asked where he resided, and he provided the address of 4750 Seascape Way, Apartment 308, which FULDA claimed was his only residence. FULDA informed me he previously had owned a black Pendleton safe, but had sold it. I asked FULDA if he knew Allison Phillips. FULDA described that Phillips had conducted a financial analysis of his business and personal accounts, and according to FULDA, Phillips had identified evidence that A.M.F. had embezzled a substantial sum of money from FULDA's business. FULDA stated that, at some point, he had developed a romantic relationship with Phillips. I stepped away for a short time to make a phone call. I then returned to speak with FULDA again, at which time I told FULDA that I wanted to make sure everything he had told me was 100% truthful, which FULDA claimed it was. I informed FULDA that it is a federal crime to lie to a federal agent, pursuant to Title 18, United States Code, Section 1001. FULDA stated that he understood. I then proceeded to tell FULDA that I had conducted numerous surveillances at the Apple Leaf Drive residence and believed him to reside there, and that I knew his firearms safe had been moved to the Apple Leaf

23

Drive residence.  At that point, FULDA invoked his right to counsel, and questioning ceased.[1]

59.    On September 23, 2021, after interviewing FULDA, I traveled to the Apple Leaf Drive residence where other agents were in the process of executing the search warrant.  I observed that, upon entering the residence, there was a room immediately to the right that had been opened by agents.  Inside of that room were two safes, including the Pendleton firearms safe.  I observed multiple boxes of ammunition in plain view in the room as well as at least one firearm.  FULDA provided me with the combination to the Pendleton safe, which I proceeded to open. Inside of the Pendleton safe were multiple handguns as well as a cardboard box with a manufacturer's logo for Surefire.  I opened the cardboard box, and stored inside was a firearms silencer.  I reviewed the silencer and determined that it was a Surefire 7.62 caliber suppressor bearing serial number F01563.  As described herein, this suppressor is registered in the National Firearms Registration and Transfer Record to Daniel

---

[1] I subsequently allowed FULDA to again contact his family law attorney.  I informed the family law attorney that questioning had ceased, except that we would like to ask FULDA for the combination to his safe, because ATF had a warrant to search the safe and it would otherwise be drilled to access its contents.  FULDA's family law attorney acknowledged this.  FULDA subsequently provided me with the combination to the safe after speaking with his attorney.

Robert Steiner, not to FULDA. Therefore, the possession of this Surefire 7.62 caliber suppressor by FULDA is a violation of Title 26, United States Code, Section 5861(d).

60.     On September 23, 2021, I spoke with SA Mallory Sonn, who participated on the same day in an interview of Phillips. In short, Phillips informed SA Sonn that she was dating FULDA and that FULDA lived at the Apple Leaf Drive residence 90% of the time. Phillips stated that FULDA paid her $350 per month rent for a storage room, referring to the room in the Apple Leaf Drive residence wherein agents located FULDA's firearms and firearms safe. Phillips stated that she did not have access to the storage room or the firearms safe. Phillips stated that she personally owned two firearms, but none of the firearms in the storage room belonged to her.

## III.   CONCLUSION

61.     Based on the information in this Affidavit, I respectfully submit that there is probable cause that FULDA is unlawfully possessing a silencer not registered to him

in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5861(d) and 5871.

62.    I state that the above information is true and correct to the best of my knowledge and ask that the requested search warrant be issued.

Respectfully submitted,

Jesse Hooker, Special Agent
BUREAU OF ALCOHOL,
TOBACCO, FIREARMS &
EXPLOSIVES (ATF)

Subscribed and sworn to before me this ___23___ day of September, 2021.

JOEL B. TOOMEY
United States Magistrate Judge
Middle District of Florida

26